UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 17-213-CJS

JULIE SHAUL     PLAINTIFF

v.     **MEMORANDUM OPINION AND ORDER**

NANCY A. BERRYHILL, Acting
Commissioner of Social Security     DEFENDANT

\* \* \* \* \* \* \* \* \* \*

Plaintiff Julie Shaul brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), challenging Defendant Acting Commissioner's final decision denying her applications for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act, respectively. The parties have consented to the undersigned's authority to adjudicate this action pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (*See* R. 19). At issue is whether the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" within the meaning of the Social Security Act and therefore not entitled to benefits. After a thorough review of the administrative record, for the reasons explained below, Plaintiff's Motion for Judgment on the Pleadings (R. 17) will be **denied,** and the Commissioner's Motion for Summary Judgment (R. 22) will be **granted.**

I.     **STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS**

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied correct legal standards and whether the decision is

supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994); *see also Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 604 (6th Cir. 2009) (citing *Richardson*, 402 U.S. at 401).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley*, 581 F.3d at 406. A reviewing court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.,* 693 F.3d 709, 713 (6th Cir. 2012) (citing *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007)). "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the [administrative] decisionmakers can go either way, without interference by the courts." *Blakley,* 581 F.3d at 406 (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Thus, "[i]f the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion." *Ulman,* 693 F.3d at 714 (quoting *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007)). The decision must stand if the evidence could reasonably support the conclusion reached. *Blakley,* 581 F.3d at 406 (citing *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that she is disabled within the meaning of the Social Security Act in order to qualify for benefits. 42 U.S.C. §§ 423(a)(1), 1381, *et seq*. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

2

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Social Security Act requires the Commissioner to follow a five-step analysis when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, a claimant must demonstrate that she is not currently engaged in "substantial gainful activity." *Vance*, 260 F. App'x at 803 (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)). Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate that she suffers from a severe impairment. *Id*. at 803-04. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" *Id*. at 804 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience. *Id*. (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). Fourth, if the impairment does not meet or equal a listed impairment, the claimant must show her impairment prevents her from doing her past relevant work. *Id*. Lastly, even if the claimant cannot perform her past relevant work, she is not disabled if she can perform other work that exists in the national economy. *Id*. (citing *Abbott*, 905 F.2d at 923). Throughout this process, the claimant carries the overall burden of establishing that she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy. *Id*. (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Julie Shaul was 47 years old at the time of the ALJ's December 2, 2016 decision, and she has a high school general equivalency diploma and past relevant work as a nurse. (*See* Administrative Record (A.R.) at 32, 321). She alleged disability due to both physical and mental impairments. (A.R. at 245). Plaintiff alleged disability due to high blood pressure and degenerative disc disease, as well as bipolar disorder with psychosis, severe depression, panic attacks, and anxiety. (*See* R. 17-1, at 1; A.R. at 245).

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on June 24, 2014, alleging disability beginning on April 5, 2013. (R. 17-1, at 1; A.R. at 215-27). These claims were denied initially on October 1, 2014, and upon reconsideration on December 24, 2014. (A.R. at 139-59). Plaintiff appeared and testified at an administrative hearing before ALJ Aubri Masterson on November 3, 2016. (*Id.* at 40). The ALJ also heard testimony from an impartial vocational expert (VE). (*Id.* at 61). After receiving testimony and reviewing the record, the ALJ issued a written decision on December 2, 2016, finding Plaintiff was not disabled within the meaning of the Social Security Act and therefore not entitled to benefits. (A.R. at 21).

The ALJ used the five-step sequential process to determine that Plaintiff was not disabled. (A.R. 21-34). *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 5, 2013, the alleged onset date of Plaintiff's disability.[1] (A.R. at 23) (citing 20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq*). At step two, the ALJ found that Plaintiff's severe impairments consisted of hypertension, degenerative disc disease of the cervical spine, obesity, major depression, bipolar disorder, anxiety disorder, psychotic

---

[1] The ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. (A.R. at 23).

disorder, and personality disorder. (A.R. at 23) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). At step three, the ALJ analyzed Plaintiff's impairments individually and in combination and found that Plaintiff did not have an impairment that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (A.R. at 25-26).

Before moving on to step four, the ALJ considered the entire record and determined that Plaintiff Shaul possessed the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following restrictions:

> [Plaintiff] can perform occasional pushing and pulling with the upper extremities. After standing, she must be able to sit for five minutes every hour without leaving the workstation. She can never climb ladders, ropes or scaffolds. She can never crawl, kneel, or crouch. She can frequently climb ramps and stairs. She can frequently stoop. She cannot balance on narrow, slippery or erratically moving surfaces or uneven terrain. She can tolerate occasional exposure to extreme cold and vibrations. She can have no exposure to hazards, including unprotected heights and moving machinery. The claimant can perform simple, routine work, which requires little judgment. She can interact frequently with supervisors during the probationary period, but then she would be limited to occasional interaction with supervisors. She can have brief and superficial interactions with coworkers. She can have no interaction with the general public. She cannot perform production paced or quota-driven work. She can work in a static environment.

(A.R. at 27).

After explaining how she determined Plaintiff Shaul's RFC, the ALJ found at step four that, based on this RFC, Plaintiff is unable to perform her past relevant work. At the administrative hearing, the ALJ heard testimony from an impartial VE who stated that based upon the RFC provided by the ALJ, a hypothetical individual with the same vocational factors and RFC as Plaintiff could not perform any of the Plaintiff's past work. (A.R. at 32). Based upon the testimony of the VE and consideration of Plaintiff's vocational history, the ALJ found that Plaintiff was unable to perform her past work as a nurse.

5

The ALJ proceeded to step five and adopted the VE's opinion that given an individual of Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that such an individual could perform, namely representative occupations such as router, marker, and packaging filling machine operator/tender. (A.R. at 33) (citing 20 C.F.R. §§ 404.1569, 416.969). Accordingly, the ALJ concluded that Plaintiff was not "disabled" within the meaning of the Social Security Act. (A.R. at 34) (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).

Plaintiff appealed the ALJ's decision to the Social Security Appeals Council and the Appeals Council denied Plaintiff's request for review. (*See* A.R. at 1). Since the Appeals Council declined to review, the ALJ's opinion serves as the Commissioner's final decision. Accordingly, on November 20, 2017, having exhausted her administrative remedies, Plaintiff timely filed her Complaint asserting the ALJ's decision was contrary to law and seeking judicial review in this Court. (R. 2). On March 26, 2018, Plaintiff filed a Motion for Judgment on the Pleadings. (R. 17). In response, Defendant filed a Motion for Summary Judgment on April 20, 2018. (R. 22). Accordingly, this matter is now ripe for review on the parties' dispositive motions.

### III.   ANALYSIS

On appeal, Plaintiff challenges the ALJ's determination that Plaintiff is not disabled under the Social Security Act, asserting that this determination is not supported by substantial evidence. (*See* R. 17-1, at 6). Specifically, Plaintiff asserts that the opinions of Dr. Troy Ashcraft, Plaintiff's primary care physician, were entitled to controlling weight. (*Id.* at 6-7). Plaintiff further asserts that the ALJ also erred when, after determining that Dr. Ashcraft's opinions were not entitled to controlling weight, she erred in considering the factors under 20 C.F.R. § 416.927(c)(1)-(5) to determine the appropriate weight Dr. Ashcraft's opinions should be given. (*See* R. 17-1, at 11). Each of these arguments will be addressed in turn.

### A. The Administrative Law Judge did not err in determining that Dr. Ashcraft's opinion was not entitled to controlling weight.

Plaintiff's first allegation of error is that the ALJ improperly failed to give controlling weight to the opinion of Plaintiff's treating physician, Dr. Ashcraft. In social security disability cases, the ALJ must consider all medical opinions that she receives in evaluating a claimant's case. *See* 20 C.F.R. §§ 404.1527, 416.927. The ALJ generally gives deference to the opinions of a treating source. *See Blakley*, 581 F.3d at 408 (citing 20 C.F.R. § 416.927(c)(2)). An opinion from a treating source "must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record." *Bolton v. Comm'r of Soc. Sec.*, 730 F. App'x 334, 337 (6th Cir. 2018) (per curiam) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013)). *See also Vance*, 260 F. App'x at 804 ("Generally, the opinions of treating physicians are given substantial, if not controlling, deference"). However, treating physicians' opinions are only given such deference when supported by objective medical evidence, and there is no required deference to unsupported medical opinions, even those provided by a treating physician. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Moreover, "the determination of disability is ultimately the prerogative of the commissioner, not the treating physician." *Id.*

Here, the ALJ cited the correct legal standard, and the ALJ's decision (A.R. at 21) appropriately identified evidence that informed her finding that the treating physician's opinion was not well-supported. The ALJ found that Dr. Ashcraft's opinions have limited or no support and "do not comport with the medical evidence" because Dr. Ashcraft "provided limited support for his psychological assessments" and "he did not provide any support for his opinion of the claimant's physical capabilities." (A.R. at 31). *See Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 176 (6th

Cir. 2009) (concluding that the ALJ properly rejected a treating physician opinion that was not supported by objective medical evidence); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (the ALJ is "not bound by conclusory statements of doctor, particularly where they are unsupported by detailed objective criteria and documentation"); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) (an ALJ's finding that a medical opinion conflicts with other evidence in the record is sufficient to discount the opinion).

Specifically, in support of her finding that Dr. Ashcraft's opinions were not entitled to controlling weight, the ALJ pointed to Plaintiff's normal performance during a psychological consultative examination and generally normal clinical signs of psychological functioning. (A.R. at 30-31). The ALJ found that Dr. Ashcraft's "stark assessments of the claimant's mental limitations, through which he characterized the claimant as extremely limited," conflict with this other objective evidence on the record. (*Id.*). The ALJ's analysis relied upon the state agency psychological consultants in reaching her conclusion, who asserted that Plaintiff was capable of understanding and remembering simple instructions and procedures under certain circumstances as well as sustained attention, concentration, effort, and pace for some tasks. (*Id.*). Further, the ALJ noted that Dr. Ashcraft's opinion of irritability and low stress tolerance were contradicted by the many mental-status examinations which showed Plaintiff exhibiting normal mood and affect. (*Id.*).

Plaintiff asserts that the ALJ impermissibly encroached upon the province of a physician by relying upon her own lay speculation to make independent medical findings and discount Dr. Ashcraft's opinions. (*See* R. 17-1, at 10). Specifically, Plaintiff pointed to the ALJ's statement in the decision that the exacerbation of Plaintiff's psychological symptoms often coincided with external stressors. (*See* R. 17-1, at 10 (citing A.R. at 29)). The record demonstrates, however, that the conclusion of the ALJ was not based upon her own lay opinion but rather was informed by the

opinion of Mary Thompson, Ph.D., a state agency psychologist. (*See* A.R. at 30, 111-12). Dr. Thompson noted that Plaintiff exhibited a "[p]attern of seeking treatment only when in crisis . . . . Some mood dysregulation is indicated but she tends to decompensate briefly and then improve with commitment to treatment." (A.R. at 111-12). Upon review, it is this Court's role only to determine whether the ALJ utilized the appropriate legal standard and whether the decision is supported by substantial evidence. *Richardson*, 402 U.S. at 390. Here, a reasonable mind might accept the evidence relied upon by the ALJ in reaching her determination as adequate to support her conclusion.

Plaintiff's argument also challenges the rationale set forth in the ALJ's opinion based upon her characterization of the evidence. These criticisms, however, impermissibly call for the Court to reweigh the evidence. *See Ulman*, 693 F.3d at 714. Plaintiff points to evidence, for instance, that Robert Noelker, Ph.D., who performed a consultative examination, found that Plaintiff's recent memory was impaired. (R. 17-1, at 8). Plaintiff asserts that Dr. Noelker's opinions "lend direct support to Dr. Ashcraft's extremely limiting mental assessment." (*Id.*). While Dr. Noelker did note impaired memory, he also found that Plaintiff was oriented in all spheres and that her judgment, remote memory, abstract thinking, and ability to calculate were all intact. (A.R. at 29, 394). The ALJ thus had a reasonable basis for finding that Dr. Ashcraft's opinions conflicted. Similar assertions that the ALJ's decision sought to "cherry-pick" the evidence (*see* R. 17-1, at 9) are equally unavailing, as it impermissibly requires the Court to resolve conflicts in the evidence. *See Ulman*, 693 F.3d at 714. The decision of the ALJ falls within the "zone of choice within which [administrative] decision makers can go either way, without interference by the courts" and should therefore be affirmed. *See Blakley,* 581 F.3d at 406.

Ultimately, the ALJ's rejection of affording controlling weight to Dr. Ashcraft's opinion was within the bounds of the ALJ's decisionmaking authority to determine the Plaintiff's RFC, *see* 20 C.F.R. §§ 404.1546(c), 416.946(c), which the ALJ does "based on all of the relevant medical and other evidence," 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). An ALJ "is not bound to accept the opinion or theory of any medical expert, but may weigh the evidence and draw [her] own inferences." *Simpson v. Comm'r of Soc. Sec.,* 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *McCain v. Dir., OWCP,* 58 F. App'x 184, 193 (6th Cir. 2003)). While an ALJ should not "play doctor and make their own independent medical findings," *id.*, that is not what the ALJ did here. When presented with Dr. Ashcraft's opinion assessing significant limitations on Plaintiff's *ability to work* due to her mental impairments (A.R. 458), the ALJ examined the medical and other evidence and considered to what extent that evidence was consistent with or contrary to assessment of such limitations. The ALJ did not make her "own independent medical findings," but rather found that the extreme work function limitations opined by Dr. Ashcraft conflicted with other evidence in the record.

Accordingly, because the ALJ relied upon substantial evidence—such relevant evidence as what a reasonable mind might accept as adequate to support her conclusion—in support of her finding that the treating source's medical opinion conflicted with the record and was not well-supported by medically acceptable clinical and laboratory diagnostic techniques, the ALJ did not commit error in finding that the opinion of Plaintiff's treating physician was not entitled to controlling weight.

    **B.    The Administrative Law Judge did not err in determining the appropriate weight Dr. Ashcraft's opinions should be given.**

Plaintiff also argues that the ALJ erred when, after determining that the treating physician's opinions were not entitled to controlling weight, she erred in balancing the factors under 20 C.F.R. § 416.927(c)(1)-(5) to determine the appropriate weight Dr. Ashcraft's opinions should be given. (*See* R. 17-1, at 11). Upon a finding by an ALJ that a treating source's opinion is not entitled to controlling weight, "a decision denying benefits must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5. The ALJ must consider the following factors in order to determine how much weight to give the opinion: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; and (5) the specialization of the treating source. 20 C.F.R. §§ 404.1527(c)(1)-(5), 416.927(c)(1)-(5).

Plaintiff asserts that the ALJ did not properly apply this process after deciding Dr. Ashcraft's opinion was not entitled to controlling weight. (*See* R. 17). This assertion is unsupported by the record. The ALJ's decision cites the five factors under 20 C.F.R. § 416.927(c) and 20 C.F.R. § 404.1527(c), and states that "after considering the aforementioned criteria, the undersigned has determined that Dr. Ashcraft's assessment warrants little weight." (A.R. at 31).

With respect to the first factor, the length of the treatment relationship and the frequency of the examination, the ALJ noted that Dr. Ashcraft examined Plaintiff Shaul in February 2015 and treated her several more times before rendering the assessment at issue. (A.R. at 31). Moving to the second factor, the nature and extent of the treatment relationship, the ALJ noted that most of Dr. Ashcraft's treatment addressed Ms. Shaul's psychological, rather than physical, problems, for which

11

he prescribed some psychotropic medications. (*Id.*). With respect to the third factor, supportability of the opinion, the ALJ noted that while Dr. Ashcraft provided limited support for his psychological assessments, he did not provide any support for his opinion of the claimant's physical capabilities. (*Id.*). Specifically, although he noted Plaintiff's psychological diagnoses, he did not note any physical diagnoses. (*Id.*). Moving to the fourth factor, the consistency of the opinion with the record as a whole, the ALJ found that Dr. Ashcraft's opinions did not comport with the medical evidence, particularly Plaintiff's grossly normal performance during a psychological consultative examination, as well as mental status examinations that frequently reflected normal mood and affect, records indicating that Plaintiff's mental health showed some improvement when she took her medications, and the opinions of two state agency psychologists who both concluded that Plaintiff remained capable of performing a range of unskilled work. (*Id.* at 24, 29, 30-31). Finally, with respect to the fifth factor, the specialization of the treating source, the ALJ recognized Dr. Ashcraft's qualifications to comment on Plaintiff's psychological condition but found that his lack of specialized expertise as a primary care physician "lends little weight to his findings regarding the claimant's psychological impairments." (*Id.* at 31).

In sum, upon a finding that the opinions of Dr. Ashcraft were not entitled to controlling weight because they were not well-supported by medical evidence, the ALJ then appropriately weighed the applicable factors. In reaching her determination that Dr. Ashcraft's opinions were entitled to limited weight, the ALJ's decision plainly sets forth the basis for her ultimate conclusion, and draws a logical bridge to instruct the Court of her reasoning. In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *See Richardson*, 402 U.S. at 390. This Court may not try the case de novo, resolve conflicts in the

evidence, or decide questions of credibility. *Ulman*, 693 F.3d at 713. The record demonstrates that the ALJ's decision utilized the correct legal standards and is supported by substantial evidence, and therefore fell in the "zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Blakley,* 581 F.3d at 406. That the record could possibly support an alternate reading of the evidence is insufficient to justify remand, and Plaintiff's argument therefore fails.

### IV. CONCLUSION

For the reasons stated herein, Plaintiff's arguments lack merit and the ALJ's decision is supported by substantial evidence. Accordingly, **IT IS ORDERED** as follows:

1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

2) Plaintiff's Motion for Judgment on the Administrative Record and Pleadings Pursuant to Fed. R. Civ. P. 12(c) (R. 17) is hereby **DENIED**;

3) Defendant Commissioner's Motion for Summary Judgment (R. 22) is hereby **GRANTED**; and

4) A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 27th day of August, 2018.



Signed By:
*Candace J. Smith*
**United States Magistrate Judge**

J:\DATA\social security\17-213 Shaul MOO.wpd